UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 1 9 2011

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

| | |
|---|---|
| HEATHER MAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF JONESBORO, GEORGIA | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No.:

**JOF**

**1:11-CV-3160**

## COMPLAINT

COMES NOW Plaintiff Heather May, by and through her undersigned

counsel, and files this Complaint for damages against Defendant City of Jonesboro,

Georgia.

## JURISDICTION AND VENUE

1.

These claims arise under 42 U.S.C. §1983, Title VII of the Civil Rights Act

of 1964, Civil Racketeer Influenced and Corrupt Organizations Act (RICO) and

the First Amendment to the U.S. Constitution;  Plaintiff also brings claims for

slander and malicious prosecution under the tort laws of the State of Georgia.

2.

Jurisdiction is specifically conferred on the Court by 28 U.S.C. §1331, 42 U.S.C. §2000e-5(f)(3); 18 U.S.C. §1964.  Jurisdiction is further conferred on the Court for the state law claims by 28 U.S.C. § 1367.

3.

Plaintiff Heather May is a resident of Jonesboro, GA  30236.

4.

Defendant City of Jonesboro is a municipal corporation with its principal place of business at 124 North Avenue, Jonesboro, Georgia  30236.

FACTS

5.

Plaintiff was hired as a full-time police officer by the Defendant, City of Jonesboro's Police Department, on January 5, 2009.

6.

In July 2009, Sergeant Jeff Oliver became Plaintiff's direct supervisor.

7.

Sergeant Oliver's direct supervisor during all times relevant to this Complaint was Lieutenant Vicki Wright.

8.

During the time period Sergeant Oliver supervised Plaintiff May.  Plaintiff May was the only female officer reporting to Sergeant Oliver.

9.

After Sergeant Oliver became Plaintiff May's supervisor, Plaintiff May was required to respond to all police calls unless she and Officer Brad Pair, her partner, were already out on a call.  The male officers on the shift were thereby relieved of the job requirements to respond to calls on a regular basis.

10.

It is a common practice for police officers to stop their patrol cars for the purpose of conferring with another officer. Engaging in such conduct is known as a "5-9."

11.

During the time period Sergeant Oliver supervised Plaintiff May, male officers were allowed to "5-9" with other male officers.

12.

Sergeant Oliver specifically ordered Plaintiff May not to stop her patrol car for the purpose of conferring with any male officer because "it just wouldn't look right."

13.

Prompted by another incident of discriminatory treatment, Plaintiff May complained about Sergeant Oliver's treatment of her to Lieutenant Wright on the evening of December 15, 2009.

14.

During the meeting when Plaintiff May complained to Lieutenant Wright, Lieutenant Wright pulled the records reflecting the number of calls each officer had taken during the months of October and November 2009.  The numbers indicated other officers reporting to Sergeant Oliver only took approximately 1 call to every 30 calls Officers May and Pair would take.

15.

Sergeant Oliver, having observed the closed-door meeting between Plaintiff May and Lieutenant Wright, ordered all officers back to the station in a loud and unprofessional tone over the radio.

16.

Sergeant Oliver's loud and unprofessional order so soon after the complaint by Officer May caused Plaintiff May to fear retaliation for complaining of discrimination.

4

17.

Officer May contacted Lieutenant Vicki Wright and complained of retaliation by Sergeant Oliver.  As a result, Lieutenant Wright called Sergeant Oliver and sent him home from work early for the evening.

18.

Sergeant Oliver's conduct in ordering all officers back to the station house in a loud unprofessional manner, immediately after seeing Officer May speaking with Lieutenant Wright alone constitutes retaliation.

19.

During a supervisor's meeting on December 18, 2009, Lieutenant Wright verbally counseled Sergeant Oliver not to treat Plaintiff May differently than other officers.

20.

Officer May was on vacation from December 17, 2009 to December 27, 2009.

21.

During a road block on the evening of December 28, 2009, Officer Heather May called for backup because she was in a "29" (a fight) with suspect J.R.

22.

Officer Bennett was the first officer to the scene to help Officer May, followed by Officer Jonathan James and Lieutenant Wayne Woods.

23.

Officer Bennett then struck suspect J.R. several times with such a lack of control that Officer Bennett also struck Officer May, causing an injury to her arm.

24.

Officer Pair later gave a statement that when he arrived on the scene, the suspect was handcuffed, but Officer Bennett was "striking the subject."

25.

Officer Bennett did not stop striking the subject until then-Lieutenant Wayne Woods stated "that's enough."

26.

After the use of force ended, Lieutenant Vicki Wright arrived at the scene.

27.

Officer Bennett's actions toward suspect J.R. gave Officer May a reasonable belief that Officer Bennett had violated the civil rights of suspect J.R. within the meaning of 42 U.S.C. § 1983.

28.

Officer Bennett stated to Sergeant Kimball, "I may now have to think twice every time I back Officer May up on any call thinking she might make false accusations about my actions," or words to that effect.

29.

Lieutenant Vicki Wright left the scene of the J.R. traffic stop before Officer May had an opportunity to complete her paperwork for the stop.

30.

When Officer May returned to the station house after the J.R. traffic stop, Officer Bennett, Officer James, Sergeant Hammond and Lieutenant Wright were talking in the parking lot.

31.

Lieutenant Wright handed Officer May a use of force report that Lieutenant Wright had already filled out.  When Officer May stated she was supposed to fill out the use of force report herself, Lieutenant Wright said "Officer Bennett told me what to write" or words to that effect.

32.

When Officer May completed her incident report regarding the J.R. traffic stop early in the morning of December 29, 2009, Officer May included an accusation that Officer Bennett used excessive force on suspect J.R.

33.

On December 30, 2009, an internal investigation was commenced against Officer May regarding a traffic stop on Jonesboro Road that is subject of Jonesboro Police Department Incident Report No. 12-09-09914 (hereinafter the "Jonesboro Road Traffic Stop"). Such investigation was numbered 12-09-0003 and conducted by then-Lieutenant Wayne Woods.

34.

Internal Investigation 12-09-0003 was prompted by a request from Sergeant Jeff Oliver that Officer May be investigated for making the Jonesboro Road Traffic Stop outside of the Jonesboro City limits.

35.

Sergeant Oliver, Lieutenant Wright, then-Lieutenant Wayne Woods and then-Chief Tim Jessup reviewed the video of the Jonesboro Road Traffic Stop on December 30, 2009.

36.

The Jonesboro Road Traffic Stop video reveals that the car maneuver that lead to the traffic stop was not captured on camera, as it occurred just prior to Officer May turning on her lights and initiating the camera.

37.

While reviewing the Jonesboro Road Traffic Stop video, then-Lieutenant Woods stated, "that's a firing offense," to which then-Chief Jessup replied, "Well, there you go."

38.

Then-Lieutenant Woods determined in Internal Investigation 12-09-003 that the Jonesboro Road Traffic Stop "report shows False Statements by Officer May in regards to the vehicle and its behavior backing out of the business."

39.

When the District Attorney presented Officer May's alleged false statements in the Jonesboro Road Traffic Stop report to the Grand Jury, the Grand Jury "no billed" the accusation.

40.

When POST investigated Officer May for the alleged false statements in the Jonesboro Road Traffic Stop report, she was exonerated.

41.

During Internal Investigation 12-09-0003, Sergeant Oliver and Officer Olinger suggested Officer May be investigated regarding Jonesboro Incident Report #04-09-03105. As a result, the investigation was expanded to include Jonesboro Incident Report #04-09-03105 (hereinafter the "Possession Arrest").

42.

The Possession Arrest report was signed by Officer Olinger and Sergeant Oliver, not by Officer May.

43.

Then-Lieutenant Woods determined in Internal Investigation 12-09-003 that the Possession Arrest report also indicated Officer May had made false statements; however, the official report of Internal Investigation 12-09-003 does not include such findings.

44.

Lieutenant Wayne Woods concluded Internal Investigation 12-09-003 on January 6, 2010.   However, at no time during the investigation was Officer May given the opportunity to make a full statement.

45.

Lieutenant Wayne Woods also failed to interview Officer May's partner, Officer Brad Pair, who witnessed the Jonesboro Road Traffic Stop during Internal Investigation 12-09-003.

46.

Based on information and belief, Chief Tim Jessup engaged in conversations between the Jonesboro Police Office and the Jonesboro Mayor's office between

December 16, 2009 and January 7, 2010, during which it was agreed that Officer May would not be prosecuted.

47.

Mayor Luther Maddox then insisted he was going to terminate Officer May on or about January 7, 2010.

48.

Chief Tim Jessup, resigned on January 7, 2010 prior to Mayor Maddox's attempted termination of Officer May's termination that same day.

49.

On January 7, 2010, after the investigation was completed, Mayor Luther Maddox informed Plaintiff May she was being terminated from employment.

50.

The City of Jonesboro Charter provides that the Mayor and the City Council must act on personnel decisions regarding police officers; the authority to act does not reside with the Mayor alone.  Jonesboro, Georgia, Code of Ordinances Sections 2.27 and 2.29.

51.

The alleged termination of Officer May by Mayor Luther Maddox was the result of gender discrimination.

11

52.

The alleged termination of Officer May by Mayor Luther Maddox was in retaliation for her complaint of gender discrimination.

53.

The alleged termination of Officer May by Mayor Luther Maddox was in retaliation for her allegation of excessive use of force by Officer Adam Bennett.

54.

Officer May attempted to exercise her right to an appeal to the City Council under the City Charter by letter to Mayor Luther Maddox dated January 12, 2010, but the Mayor unilaterally and/or in conjunction with City Attorney Steve Fincher refused to grant her an appeal.

55.

Plaintiff May again attempted to invoke her right to have the City Council for the City of Jonesboro make the final decision regarding the termination of her employment on February 22, 2010 by writing a letter to the mayor and all of the city councilmen.

56.

Mayor Luther Maddox again objected to Officer May's appeal, as reflected in the billing records of City Attorney Steve Fincher.

57.

Notwithstanding the above objections, the Jonesboro City Council tasked Councilmembers Clarence Mann and Joe Compton with completing an investigation into Plaintiff May's allegations that her planned discharge was discriminatory and the result of harassment.

58.

On February 24, 2010 (two days after Officer May's request for an appeal was delivered to all City Councilmembers), the then-chief Wayne Woods forwarded to allegations of making false statements to District Attorney Tracey Lawson for prosecution.

59.

The referral of two allegations of false statements was gender discrimination.

60.

The referral of two allegations of false statements was in retaliation for Officer May's report of gender discrimination.

61.

The referral of two allegations of false statements was in retaliation for Officer May's allegation of excessive use of force against Officer Adam Bennett.

62.

On or about March 9, 2010, The Lovejoy Police Department requested a

Background Check/Employment Verification from the City of Jonesboro Police

Department regarding Officer May.  It was told "H.M. under invest. by Council

committee.  Could not disclose, but could say – terminated not resigned, and there

were disciplinary issues calendared for."

63.

The job reference was a perpetuation of gender discrimination.

64.

The job reference was in retaliation for Officer May's report of gender

discrimination.

65.

The job reference was in retaliation for Officer May's allegation of

excessive use of force against Officer Adam Bennett.

66.

Councilmembers Mann and Compton produced a written report concluding,

among other things, "we can only conclude that her firing was discriminatory."

67.

Despite the conclusions of Councilmembers Mann and Compton, the full
City Council, in a 4-3 vote, made the final determination to discharge Plaintiff May
from employment on May 18, 2010.

68.

In the 4-3 City Council vote to terminate Officer May on May 18, 2010,
Mayor Luther Maddox broke the 3-3 tie vote by voting to terminate Officer May.

69.

During Internal Investigation 12-09-003, Officer Olinger made a false
statement that he advised Officer May by radio that she had made a traffic stop
outside of the city.

70.

Councilmembers Compton and Mann reported that documents were
sometimes added and sometimes removed from Officer May's personnel file
during the investigation.

71.

Officer May contacted Janice Truhan, the Mayor's Secretary, with questions
regarding a recording produced in response to an Open Records Act request.   Ms.
Truhan responded that the one "up here" is blank and explained she would have to

contact Wayne Woods to get the recording to get it to play (even though he was not the Chief at that time).

72.

Despite there being six officers present at the incident involving Officer Bennett and suspect J.R. on December 29, 2009, no tape recordings from the new dashboard cameras were available for the internal investigation of Officer Bennett, nor were such tape recordings available to Councilmembers Mann and Compton during their investigation of Officer May's appeal.

73.

Councilmembers Mann and Compton found that the absence of such video tapes from Officer Bennett's encounter with suspect J.R. to be suspect.

74.

Based on information and belief, someone with the Jonesboro Police Department erased and/or deleted the video tapes from Officer Bennett's encounter with suspect J.R.

75.

Officer Pair wrote a supplemental report for the Bennett incident with suspect J.R.  However, in the Bennett Internal Investigation, Officer Pair's statement was altered to indicate Officer Bennett should be exonerated rather than find Officer Bennett engaged in an excessive use of force.

16

76.

Officer May's allegations of excessive use of force against Officer Bennett were found unsubstantiated in the Bennett Internal Investigation despite the failure to interview Officer May, the complaining party.

77.

Additionally, though Lieutenant Vicki Wright is recorded as stating suspect J.R. was questioned, all evidence of such interview is missing from the Bennett Internal Investigation.

78.

On or about July 14, 2011, Joe Shirley asked Ms. May to tell him what had happened because he had been told she "lied and was fired" or words to that effect.

79.

Officer May exhausted her internal administrative remedies.

80.

Officer Heather May filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") via letter dated August 2, 2010 which was received by the EEOC on August 11, 2010. ("The First Charge")

81.

The First Charge was assigned number 410-2010-04320, and closed without investigation.

17

82.

Officer Heather May filed an additional charge of discrimination with the EEOC by appearing in person at the Atlanta District Office on August 18, 2011. ("The Second Charge")

83.

The Second Charge was assigned charge number 410-2010-04456.

84.

A Notice of Right to Sue was issued with respect to The Second Charge on August 10, 2011. A copy of said Notice is attached hereto as Exhibit A.

85.

The undersigned council mailed an ante litem notice to the City of Jonesboro via letter dated and mailed September 15, 2010. The ante litem notice covered the Title VII claim, the RICO claim, the slander claim and the malicious prosecution claim.

86.

As a result of the above actions by the City of Jonesboro, Officer May suffered lost wages.

87.

As a result of the above actions by the City of Jonesboro, Officer May was not hired by other law enforcement agencies.

18

88.

As a result of the above actions by the City of Jonesboro, Officer May was required to hire and pay an attorney to defend her from criminal charges.

89.

As a result of the above actions by the City of Jonesboro, Officer May was required to hire an attorney to bring the discrimination and RICO causes of action against the City.

90.

As a result of the above actions by the City of Jonesboro, Officer May was required to pay the expenses of this action.

91.

As a result of the above actions by the City of Jonesboro, Officer May experienced pain and suffering.

92.

As a result of the above actions by the City of Jonesboro, Officer May suffered medical damages, including heart irregularities and the loss of two pregnancies.

RICO

93.

Plaintiff re-alleges paragraphs 1 through 92 above as if they were fully set forth herein.

94.

A pattern of racketeering means only two (2) RICO predicate acts during any given ten-year period.  18 U.S.C. § 1961(5).

95.

The Jonesboro Police Department has engaged in at least two acts of obstruction of justice, including related to Plaintiff May, over the past 10 years.

96.

The Jonesboro Police Department has engaged in at least two acts of witness tampering, including related to Plaintiff May, over the past 10 years.

97.

When it caused Officer May to be prosecuted, Defendant engaged in obstruction of justice by threatening communication within the meaning of 18 U.S.C. § 1503.

98.

When the investigator in the Bennett investigation attributed statements to Officer May without ever interviewing her, Defendant engaged in obstruction of justice by threatening communication within the meaning of 18 U.S.C. § 1503.

99.

During January 2010 and on unknown dates, when Defendant told local business owners Plaintiff May was terminated for lying, Defendant engaged in obstruction of justice by threatening communication within the meaning of 18 U.S.C. § 1503.

100.

When the Mayor attempted to terminate Plaintiff May, Defendant engaged in obstruction of justice by threatening communication within the meaning of 18 U.S.C. § 1503.

101.

When the City Council voted to terminate Officer May, Defendant engaged in obstruction of justice by threatening communication within the meaning of 18 U.S.C. § 1503.

102.

When the Mayor attempted to terminate Plaintiff May, Defendant engaged in witness tampering within the meaning of 18 U.S.C. § 1512 by attempting and

21

succeeding in delaying or preventing her testimony against Officer Bennett in the investigation into his excessive use of force on December 28, 2009.

103.

When the City Council voted to terminate Officer May, Defendant engaged in witness tampering within the meaning of 18 U.S.C. § 1512 by attempting and succeeding in delaying or preventing her testimony against Officer Bennett in the investigation into his excessive use of force on December 28, 2009.

104.

When the investigator in the Bennett investigation attributed statements to Officer May without ever interviewing her, Defendant engaged in witness tampering within the meaning of 18 U.S.C. § 1512 by attempting and succeeding in delaying or preventing her testimony against Officer Bennett in the investigation into his excessive use of force on December 28, 2009.

105.

When Lieutenant Vicki Wright wrote false statements in the report of Plaintiff May's workers' compensation injury sustained during the said excessive use of force, Defendant engaged in witness tampering within the meaning of 18 U.S.C. § 1512 by attempting to influence, delay or prevent her testimony against Officer Bennett in the investigation into his excessive use of force on December 28, 2009.

22

106.

When Defendant caused or induced a person to erase, withhold, alter or tamper with one or more of the dashboard videos of the December 28, 2009 use of force incident by Officer Bennett, Defendant engaged in witness tampering within the meaning of 18 U.S.C. § 1512 by attempting to influence, delay or prevent Officer May's testimony against Officer Bennett in the investigation into his excessive use of force on December 28, 2009.

107.

When Defendant caused or induced a person to alter or tamper with the recording of Plaintiff May's *Garrity* interview as it was produced to her in response to an open record act request Defendant engaged in witness tampering within the meaning of 18 U.S.C. § 1512 with respect to her own criminal prosecution and the Officer Bennett investigation.

108.

When Defendant caused or induced a person to alter or tamper with the recording of Plaintiff May's *Garrity* interview as it was produced to her in preparation for the defense of her malicious prosecution, Defendant engaged in witness tampering within the meaning of 18 U.S.C. § 1512 with respect to her own criminal prosecution and the Officer Bennett investigation.

109.

When Defendant caused or induced a person to alter or tamper with the recording of Plaintiff May's exit interview as it was produced to her in response to an open record act request, Defendant engaged in witness tampering within the meaning of 18 U.S.C. § 1512 with respect to her own criminal prosecution and the Officer Bennett investigation.

110.

When Defendant caused or induced a person to alter or tamper with the recording of Plaintiff May's exit interview as it was produced to her in preparation for the defense of her malicious prosecution, Defendant engaged in witness tampering within the meaning of 18 U.S.C. § 1512 with respect to her own criminal prosecution and the Officer Bennett investigation.

### Title VII – Gender Discrimination and Retaliation

111.

Plaintiff re-alleges paragraphs 1 through 110 above as if they were fully set forth herein.

112.

Plaintiff May, who worked the night shift, was treated differently than similarly situated male officers reporting to Sergeant Jeff Oliver.

24

113.

Plaintiff May complained about gender discrimination to Lieutenant Vicki Wright on the evening of December 15, 2009.

114.

Sergeant Oliver retaliated against Plaintiff May on December 16, 2009 by ordering all personnel back to the station house in a loud and unprofessional manner.

115.

Lieutenant Vicki Wright counseled Sergeant Oliver not to treat Officer May differently in a supervisors' meeting on December 18, 2009.

116.

On or about December 30, 2009, Sergeant Oliver began an investigation into whether Officer May had made a traffic stop outside of the city limits.

117.

Male officers had engaged in such conduct without being similarly investigated.

118.

As a result of said investigation, the Mayor and then-Lieutenant Wayne Woods alleged Officer May made a false statement because she failed to review her video prior to writing her statement of the traffic stop.

25

119.

The allegedly false statement was a matter of perception to Officer May, regarding the speed of the vehicle in question.  Further Officer May accurately noted suspicious activity of a car backing out of a closed business prior to activating her blue lights, and thus the camera.

120.

Officer May was not allowed to make a statement in her defense as a part of the investigation of her allegedly "false statement."

121.

Officer Brad Pair, who was Officer May's partner, was not allowed to make a statement in defense of Officer May as a part of the investigation of her allegedly "false statement."

122.

Then-Chief Tim Jessup resigned on January 7, 2010 rather than take part in prosecuting Officer May, as Mayor Luther Maddox was determined to do.

123.

Mayor Luther Maddox attempted to terminate Officer May on January 7, 2010, in contradiction to the Jonesboro City Charter.

124.

The City of Jonesboro referred Officer May for prosecution on or about February 24, 2010.

125.

The City of Jonesboro reported Officer May's alleged "false statements" to POST Council for investigation.

126.

The City did not terminate, reprimand or report Officer Bennett to POST Council for his excessive use of force on suspect J.R.

127.

Officer May was cleared by the grand jury on July 14, 2010.

128.

Officer May was cleared by POST Council on March 9, 2011.

129.

Then-Chief Wayne Woods gave a negative recommendation to the City of Lovejoy Police Department.

130.

The proffered reason for Officer May's termination is pre-textual.

131.

The above actions were motivated in part by Officer May's gender (female).

132.

The above actions were motivated in part by Officer May's complaint of gender discrimination on December 15, 2009 and her further appeal and complaint of gender discrimination on February 22, 2010.

133.

Officer May has exhausted her administrative remedies as required by Title VII of the Civil Rights Act of 1964, as amended.

134.

Defendant is liable to Plaintiff May for back pay as a result of its discrimination.

135.

Defendant is liable to Plaintiff May for front pay as a result of its discrimination.

136.

Defendant is liable to Plaintiff May for compensatory damages as a result of its discrimination.

137.

Defendant is liable to Plaintiff May for punitive damages as a result of its discrimination because its termination of her was the result of intentional

discrimination done with malice or reckless indifference to her federally protected rights.

## Malicious Prosecution

### 138.

Plaintiff re-alleges paragraphs 1 through 137 above as if they were fully set forth herein.

### 139.

On February 24, 2010, Defendant referred Plaintiff's alleged false statements and alleged false swearing to the District Attorney for criminal prosecution.

### 140.

The District Attorney moved forward with Plaintiff's prosecution for criminal offenses when it demanded her appearance at the grand jury.

### 141.

On June 25, 2010, Plaintiff's birthday, then-Chief Garland telephoned Plaintiff May and ordered her to appear before the Clayton County grand jury on July 14, 2010.

142.

During the telephone call, Plaintiff May suggested then-Chief Garland meet with her and her attorney representing her before POST Council before moving forward with the prosecution.

143.

Then-Chief Garland stated, "It's not warranted in this case."

144.

Plaintiff appeared before the grand jury as ordered on July 14, 2010, and the grand jury no-billed the charges.

145.

During grand jury testimony, Wayne Woods admitted he was the individual who referred Plaintiff May for prosecution.

146.

Upon the grand jury clearing Plaintiff May of all charges, then-Chief Garland stated to Plaintiff May, "I am so sorry; I wish I would have met with you."

147.

When Wayne Woods referred Plaintiff May to the District Attorney for criminal prosecution, it was done with malice.

148.

At the time Wayne Woods, who was acting on behalf of the City of Jonesboro Police Department, referred Plaintiff May for criminal prosecution, there was no probable cause for the prosecution, as later confirmed by the grand jury.

149.

Plaintiff May was damaged as a result of her prosecution by Wayne Woods, who was acting on behalf of the City of Jonesboro Police Department.

150.

Defendant owes Plaintiff May reimbursement of her attorney fees for its malicious prosecution of her.

151.

Defendant owes Plaintiff May compensatory damages for its malicious prosecution of her.

152.

Defendant owes Plaintiff May damages not confined to actual damages, but taking into account all circumstances of the case.

31

## Violation of Due Process

### 153.

Plaintiff re-alleges paragraphs 1 through 152 above as if they were fully set forth herein.

### 154.

Officer May had a property interest in her position as a police officer for the City of Jonesboro Police Department based upon the expectations of the parties involved.

### 155.

Officer May had a right to substantive and procedural due process regarding her dismissal from employment.

### 156.

The City of Jonesboro denied her substantive and procedural due process rights regarding her dismissal by refusing to allow her to make a full statement in the Jonesboro Road Traffic Stop Internal Investigation.

### 157.

The City of Jonesboro denied her substantive and procedural due process rights regarding her dismissal by refusing to allow her partner, Officer Brad Pair, to make a full statement in the Jonesboro Road Traffic Stop Internal Investigation.

158.

The City of Jonesboro denied her substantive and procedural due process rights regarding her dismissal by refusing to allow her to make a full statement in her *Garrity* interview.

159.

The City of Jonesboro denied her substantive and procedural due process rights regarding her dismissal by refusing to allow her to make a full statement in her exit interview.

160.

The City of Jonesboro denied her substantive and procedural due process rights regarding her dismissal by denying her an appeal based upon her January 12, 2010 written request for an appeal to the City Council.

161.

City of Jonesboro personnel made defamatory statements to third parties in connection with her termination that deprived her of her good name and reputation without due process, i.e. deprivation of reputational liberty.

162.

The defamatory statements included telling business owners, i.e. the public, that Officer May had been fired for making false statements and is a liar.

163.

The statements referenced above are of a stigmatizing nature attending to Officer May's discharge.

164.

Officer May did not have a meaningful opportunity to clear her name regarding such statements, due in part to the procedural and substantive due process violations attendant to her termination.

165.

Officer May satisfied her requirement to submit an ante litem notice to the governing authority by letter dated September 15, 2010.  See Exhibit B attached hereto.

166.

Officer May suffered the loss of her employment with the City of Jonesboro Police Department as a result of the City's substantive and procedural due process violations.

167.

Officer May suffered damage to her reputation as a result of the City's substantive and procedural due process violations.

168.

Officer May has been unable to obtain employment in law enforcement as a result of the City's substantive and procedural due process violations.

169.

Defendant is liable to Plaintiff May for back pay as a result of its violation of her due process rights.

170.

Defendant is liable to Plaintiff May for front pay as a result of its violation of her due process rights.

171.

Defendant is liable to Plaintiff May for compensatory damages as a result of its violation of her due process rights and the damage to her reputation.

Violation of First Amendment Rights

172.

Officer May exercised her constitutional rights to free speech on a matter of public concern when she reported Officer Bennett for an excessive use of force violation.

173.

Officer May exercised her constitutional rights to free speech on a matter of public concern when she complained of sex discrimination by Sergeant Oliver.

174.

The City of Jonesboro Police Department, a governmental entity, terminated Officer May's employment in part in retaliation for her exercise of constitutional right of free speech.

175.

Thereby, the City of Jonesboro Police Department violated Officer May's right to free speech in contravention of the First Amendment to the U.S. Constitution.

176.

The City of Jonesboro owes Plaintiff May damages for its violation of her constitutional right to free speech.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court:

a. Declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights;

b. Enjoin Defendant from engaging in such conduct;

c. Reinstate Plaintiff to an equivalent position with full restoration of all rights, seniority, and benefits, or alternatively, award Plaintiff an amount of front pay;

d. Enter judgment for Plaintiff in the amount of the compensatory damages awarded by the jury, including backpay, medical expenses, attorney's fees, litigation costs and interest at the prevailing rate;

e. Enter judgment for Plaintiff for treble damages under RICO; and

f. Enter judgment for such other relief as the Court deems just and equitable.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL JURY ISSUES.

Submitted this 19th day of September, 2011.

Melissa Malcom
Georgia Bar No. 467011
Melissa P. Malcom, LLC
101 Hampton Street
P.O. Box 1630
McDonough, Georgia  30253
(678) 833-9178
Fax: (678) 833-5436
Email: mmalcom@henrycountylaw.com
ATTORNEY FOR PLAINTIFF